# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **KATHY FAYE TAYLOR,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  3:09-CV-0024-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **Social Security Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Kathy Faye Taylor brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for social security and Supplemental Security Income ("SSI") benefits.  *See* 42 U.S.C. §§ 405(g), 1383(c).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed as it is supported by substantial evidence and proper legal standards were applied.

## I.      Procedural History

Plaintiff filed her application for Social Security and SSI benefits on December 12, 2006.[1] (Tr. 24-25).  Plaintiff's application was denied and on June 18, 2007, she requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 24-30, 31). Plaintiff's case was heard by ALJ Joseph F. Gilliland on July 16, 2008. (Tr. 330-44).  In his August 12, 2008 decision, the ALJ determined that Plaintiff was not eligible for social security and SSI benefits because she failed to meet the disability

---

[1]Plaintiff's Application Summary for SSI benefits shows Plaintiff applied for benefits on January 8, 2007.  (Tr. 43-49).

requirements of the Act and retained the residual functional capacity ("RFC") to perform a significant range of sedentary work. (Tr. 13-21). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 21, 2008. (Tr. 5-7, 9). Within the required time limitations, Plaintiff filed this civil action. (*See* Pl's Comp.)

Plaintiff was born on June 11, 1961, and has an eighth grade education. (Tr. 43, 69). Plaintiff claims she has been unable to perform substantial gainful activity since the date of her alleged onset of disability, April 14, 2005, due to high blood pressure and back problems. (Tr. 43, 50, 63, 65). Plaintiff alleges that she cannot do strenuous activities, and experiences pain when she stands or walks for an extended period of time. (Tr. 65). Plaintiff testified that she is unable to hold down a regular job, because she hurts constantly and employers require her to pick-up fifty pounds or more and she can not do it. (Tr. 337). She stated because of her constant pain, she must change positions frequently, and lacks any substantial lifting capabilities. (*Id*.). Plaintiff further testified that she is only able to walk between five and ten minutes at a time. (*Id.*). She characterized her daily pain as moderate to severe and estimated that she lies down two to four times per day for thirty minutes to an hour. (Tr. 338). Plaintiff claimed that she has trouble picking up a gallon of milk, as such an effort strains her back. (Tr. 339).

In the course of her testimony, Plaintiff also described the nature and extent of her daily activities. She testified that she dresses herself, sits for awhile, stands for awhile, and cooks dinner. (Tr. 334). Plaintiff also testified that she goes grocery shopping, with assistance, once a month and attends church occasionally. (Tr. 334-35).

Between April and October 2005, Plaintiff visited Dr. Gary Daniel on seven separate occasions. (Tr. 99-114). Plaintiff was first seen by Dr. Daniel on April 15, 2005, at which time she

complained of back pain.  (Tr. 112).  Plaintiff stated that, two days prior, she had strained her back while lifting a box of books at work.  (*Id.*).  Plaintiff alleged that, five years prior to that, she had experienced a similar episode of back pain.  (*Id.*).  Dr. Daniel detected tenderness in the left thoracic and lumbar regions, limited range of motion in the lumbar spine, and a small osteophyte at L3.  (*Id.*).  Dr. Daniel noted that Plaintiff's motor strength and sensation were equal and intact, and that she was able to heel, toe, walk, and squat.  (*Id.*).  Dr. Daniel diagnosed Plaintiff with an acute lumbar strain and placed a number of restrictions on her work-related activities, including that she be allowed to alternately sit or stand, that she not be asked to stoop or bend, and that she not be required to lift more than twenty pounds.  (Tr. 111, 113).

Plaintiff was next seen by Dr. Daniel for a follow-up appointment on April 22, 2005, at which time she reported experiencing pain in her left lower leg.  (Tr. 110).  She further stated that she was having to lift totes full of books at her job.  In light of her continued pain, Dr. Daniel recommended that the aforementioned work restrictions remain in effect.  (Tr. 109).  Dr. Daniel next saw Plaintiff on April 28, 2005.  (Tr. 107-08).  During this visit, Plaintiff noted that her left leg had recently given out, causing her to fall and strain her back.  (Tr. 108).  Dr. Daniel continued to advise that Plaintiff adhere to the original work restrictions.  (Tr. 107).

At the behest of Dr. Daniel, Plaintiff submitted to an MRI on April 29, 2005, the results of which were examined by Dr. Robert Chasan.  (Tr. 114).  Dr. Chasan determined that Plaintiff had a herniation of the left paramedian disk at L5-S1, a herniation of a small focal disk at T11-12, and an impingement on the left S1 nerve root.  (*Id.*).

During her subsequent visit to Dr. Daniel on May 20, 2005, Plaintiff again complained of back and leg pain.  (Tr. 106).  At this time, Dr. Daniel noted that Plaintiff's medical records indicate a pre-

existing back condition. (*Id.*). He also advised that Plaintiff's aforementioned work restrictions continue to be applied. (Tr. 105). Plaintiff again reported back pain to Dr. Daniel on May 27, 2005, causing Dr. Daniel to recommend that she see an orthopedist. (Tr. 104). The impetus for Plaintiff's final visit to Dr. Daniel, which occurred on October 6, 2005, was a contusion of her left knee. (Tr. 102).

On February 25, 2000, Plaintiff submitted to physical therapy at Helen Keller Hospital in an attempt to relieve pain in her left hip. (Tr. 133). The attending therapist noted that Plaintiff had a herniated nucleus pulposus at L5-S1, complained of pain in the left lower extremity, and had difficulty walking. (*Id.*). The therapist recommended a course of therapy including back extension exercises and gait training. (Tr. 134). Plaintiff also underwent physical therapy on April 24, 2006 in relation to an injury of her right shoulder, which resulted from a fall Plaintiff suffered when she fell from a boat, and only bears tangential relation to her alleged disability.

Between August 2005 and March 2008, Plaintiff presented to the Emergency Room at Helen Keller Hospital on four separate occasions. On August 29, 2005, Plaintiff reported lower back pain. (Tr. 120-24). Similarly, she complained of back pain on September 19, 2006. (Tr. 153-56). Again, on December 29, 2006, Plaintiff alleged lower back pain. (Tr. 149-52). After stepping in a hole and injuring her back, Plaintiff visited the ER on March 17, 2008, at which time she was diagnosed with an acute myofascial strain. (Tr. 237-41).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the

performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." (*Id.*).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged April 14, 2005 onset date of disability. (Tr. 15). The ALJ determined that Plaintiff has a number of severe impairments, including a herniated nucleus pulposus at L5-S1, hypertension, obesity, type 2 diabetes mellitus, and a history of asthma and stroke. (*Id.*). Although the ALJ found Plaintiff's impairments to be severe, he determined that her impairments fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. Pt. 404 Subpt. P, App. 1. (*Id.*). According to the ALJ,

Plaintiff's assertions concerning her impairments and their intensity, persistence, and limiting effects are not entirely credible due to the discrepancies between Plaintiff's subjective complaints and her RFC, as determined by the ALJ. (Tr. 16). The ALJ determined that Plaintiff retains the RFC to perform sedentary work, as long as she is allowed to alternately sit and stand. (Tr. 18). The ALJ found that Plaintiff could not perform any of her past relevant work as an order puller or cook. (Tr. 19).

The ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 339-42). The VE testified that an individual with Plaintiff's limitations could perform jobs which existed in significant numbers in the regional and national economies. (Tr. 342). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 21).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. #12 at 1). Plaintiff asserts that there are two reasons why this court should grant the relief sought: (1) the ALJ's RFC determination is not supported by substantial evidence, and (2) the ALJ's characterization of Plaintiff's credibility is not based on substantial evidence.

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982),

and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

Plaintiff avers that the ALJ's opinion is not based on substantial evidence and that the ALJ erred as a matter of law in determining that she is not entitled to social security and SSI benefits. Specifically, Plaintiff asserts that, (1) the ALJ's finding that she can preform sedentary work was not based on substantial evidence, and (2) that the ALJ's credibility finding was not based on substantial evidence. In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments

7

for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

## A. The ALJ's Determination of Plaintiff's RFC is Supported by Substantial Evidence

The court begins by noting that Plaintiff bears the burden of proving the extent of impairment and that this burden necessitates the presentation of evidence to establish her claims. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). Plaintiff asserts that the Consultative Physical Examination preformed by Dr. Gillis on May 9, 2007, does not contain enough specificity regarding her functional abilities to allow the ALJ to determine her RFC based solely on that report. (Pl.'s Mem. 4; Tr. 177-78).

A claimant's RFC assessment is central to the determination of disability because it is used to determine what type of work a claimant might acquire in the national economy, despite their impairments. 20 C.F.R. § 404.1520(e)-(f). The RFC is, in part, a "medical assessment." *See* 20 C.F.R. § 404.1513(c) and (d)(3). Thus, the ALJ generally needs some supporting medical evidence before making an RFC determination.[2] The Eleventh Circuit has stopped short of stating that an ALJ may not make an RFC determination without an assessment from an examining physician. *See*

---

[2] Plaintiff cites a former Fifth Circuit opinion for the premise that an ALJ may not "deny disability benefits without some medical opinion that in fact the claimant is capable of gainful employment". *Goodley v. Harris*, 608 F.2d 234, 236 n.1 (5th Cir. 1979). However, this is a mischaracterization of the court's holding in that case. *Goodley* stands for the premise that in the face of uncontradicted expert medical opinions that the claimant is disabled, an ALJ must have some additional evidence that the claimant is capable of engaging in gainful employment to support a denial of benefits. The Sixth Circuit has reached a conclusion which is consistent with Plaintiff's argument. Plaintiff's cited premise is more attributable to the non-binding precedent of *O'Brian v. Weinberger*, 511 F.2d 68 (6th Cir. 1975) (holding that where there is medical proof of disability, the government cannot deny disability benefits without some medical opinion that in fact the claimant is capable of gainful employment). But that decision is not binding and is not consistent with *Goodley*.

*Ribera-Figueroa v. Sec'y of Health and Human Servs.*, 858 F.2d 48, 52 (1st Cir. 1988) (An ALJ, as a lay fact finder, lacks the expertise to make a medical conclusion).   However, the ultimate responsibility for making an RFC determination rests with the ALJ.   20 C.F.R. § 416.946(c). "Opinions on some issues," such as whether a claimant is disabled or a claimant's RFC assessment, "are not medical opinions" . . . "but are, instead opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of the case." 20 C.F.R. § 416.927(e). To hold otherwise would wholly abdicate the administration of Social Security claims to the medical profession.   Thus, the ALJ's RFC finding need not completely mirror the findings or opinion of any medical source.

In the present case, the Consultative Physical Examination preformed by Dr. Gillis appears to be the only assessment in the record of Plaintiff's functional capacity actually preformed by a medical expert.   Dr. Gillis' opinion stated that the "patient would have difficulty with job requirements involving standing, sitting, walking, bending, or twisting at the waist, lifting, pushing, pulling, [and] carrying over 5 pounds".   (Tr. 178).   Plaintiff asserts that Dr. Gillis' assessment of her functional restrictions is not specific enough to allow the ALJ to make an RFC determination and that either clarification from Dr. Gillis or a second consultative examination is needed to properly determine the merits of Plaintiff's claims.   (Pl.'s Mem. 8, 12).   Plaintiff points out that the functional restrictions listed by Dr. Gillis could easily be construed to preclude the performance of the type of job functions the ALJ's opinion states that she retains.   (Pl.'s Mem. 4).   However, this is precisely the type of fact finding discretion vested in the ALJ.   Plaintiff's argument, if adopted, would vitiate this statutorily vested discretion by placing the determination of Plaintiff's functional capacity solely in the hands of the physician.

Dr. Gillis noted in his assessment that Plaintiff had an excellent ability to heel/toe walk with no balance problems and that she did not use an assistive device to aid in walking.  (Tr. 178).  Dr. Gillis' assessment also contains a statement by Plaintiff that she could walk for thirty minutes and sit for twenty minutes.  (Tr. 177).  The ALJ could glean these facts from the face of Dr. Gillis' assessment and rely upon them in interpreting exactly what type of work Plaintiff could preform within the confines of Dr. Gillis' listed restrictions.

The ALJ's RFC determination is also undergirded by additional evidence contained in the record.  For instance, the only physician to regularly treat Plaintiff for back problems was Dr. Gary McDaniel.  After suffering a job related back injury in April 2005, Dr. McDaniel treated Plaintiff and advised her to avoid lifting more than twenty pounds, avoid walking more than thirty minutes, and placed her on limited duty with regard to work activities.  Plaintiff continued to be treated by Dr. McDaniel, and on October 6, 2005 he noted that Plaintiff was fit for regular work duty.  (Tr. 99-113). Given this evidence, the ALJ had sufficient basis for interpreting the functional restrictions assigned by Dr. Gillis.  (*See* Tr. 99-113).

The court notes that it appears that Dr. Gillis' opinion was based largely on Plaintiff's on account of her symptoms and abilities.  (Tr. 177).  In fact, Dr. Gillis seems to have granted Plaintiff the benefit of the doubt in her own assessment of the severity of her restrictions.  This conclusion is borne out by the fact that Dr. Gillis' one-time consultive examination appears far more generous to Plaintiff than other assessments contained in the record.  As discussed above, Plaintiff visited Dr. Gary Daniels several times following an injury at work.  (Tr. 103).  Dr. Daniels suggested to Plaintiff that she avoid lifting more than twenty pounds and restricted her duty to sedentary work, alternating between sitting and standing.  (Tr. 103-09).  In addition to being less restrictive than the functional

10

limitations assigned by Dr. Gillis, these suggestions also seemed to be temporally limited. (Tr. 103). A non-medical DDS residual functional capacity assessment was performed and it was found that Plaintiff might lift up to twenty pounds and preform sedentary work with alternation between sitting and standing. (Tr. 179-86). When placed in contrast with other assessments of functional capacity, Dr. Gillis' functional restrictions and the ALJ's assignment of RFC appear generous. Plaintiff fails to show prejudice arising from the ALJ's finding because the record does not indicate that she was more limited than the ALJ's RFC assessment.

### B.   The ALJ's Credibility Assessment is Supported by Substantial Evidence

Plaintiff disputes the ALJ's pain and credibility assessment arguing that the finding is not supported by substantial evidence. (Pl.'s Mem. at 9-13). The Eleventh Circuit's pain standard requires: (1) evidence of an underlying medical condition, and either (2) objective evidence that confirms the severity of the alleged pain, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2008); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Additionally, in some situations, pain alone may be disabling. (*Id.*). However, an ALJ may discredit a claimant's subjective testimony regarding pain if there are explicit and adequate reasons for doing so. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

In this case, the ALJ found that Plaintiff's herniated nucleus pulposus at L5-S1, hypertension, Type 2 diabetes, history of asthma, history of left sided stroke, and obesity were severe impairments. (Tr. 15). The ALJ concluded that Plaintiff's alleged impairments could reasonably be expected to

11

produce her alleged symptoms, and by doing so, he also considered whether all of Plaintiff's symptoms could be accepted as consistent with the objective medical evidence. (Tr. 16-17).

The ALJ determined that Plaintiff satisfied the first part of the pain standard. Nonetheless, the ALJ went on to conclude that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible, to the extent they were inconsistent with her RFC. (Tr. 16). Specifically, the ALJ determined that Plaintiff's allegations of moderate to severe back pain causing severe functional limitations were not supported by the medical evidence. (*Id.*).

The ALJ cited several reasons in support of this conclusion. First, the ALJ noted that Dr. McDaniel referred Plaintiff to an orthopedist and that Plaintiff subsequently failed to act on this recommendation. (Tr. 17). This, the ALJ concluded, was not indicative of severe pain because one would expect an individual experiencing such intense pain to seek treatment as directed. (*Id.*). Regulations clearly state that a claimant will not be found disabled if she fails to follow prescribed treatment. *See* 20 C.F.R. § 416.1930. Plaintiff responds by underscoring the fact that she still had complaints of pain. (Pl.'s Mem. 11). Specifically, Plaintiff highlights her numerous visits to the emergency room at Helen Keller Hospital for back pain. (*Id.*; Tr. 120-24, 152-56). However, the ALJ specifically noted that the four emergency room visits over a period of three years was the only on-going treatment that Plaintiff received for back pain following her dismissal from Dr. Daniel's care. (Tr. 18). Furthermore, on two separate occasions, a period of more than one year elapsed between these emergency room visits. Additionally, Plaintiff states that she does not take pain medication. (Tr. 97). Generally, it can be expected that someone experiencing pain at the level Plaintiff describes would seek prescription pain medication to cope with the pain. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ reasonably took this

failure to seek treatment as substantial evidence that Plaintiff's pain assessment was not entirely credible. (Tr. 18). This court cannot conclude that doing so was error.

The court is fully aware that Plaintiff also produced evidence of an MRI of the Lumbar spine showing the presence of left paramedian disc herniation at L5-S1 impinging on the left S1 nerve root. (Tr. 114). There was additional evidence of focal central disc herniation at T11-12 without nerve impingement. (*Id.*). Certainly, this condition could reasonably be expected to produce severe pain. However, the fact that Plaintiff continued to work subsequent to this diagnosis undercuts her arguments regarding the intensity of the resulting pain. (Tr. 18). While Plaintiff's work activity during this period did not reach the level of substantial gainful activity, it must also be noted that her earning records demonstrate that throughout her work history her earnings never met such a level. (Tr. 18, 51). In fact, Plaintiff posted higher earning levels in the years 2005-2007 than almost any other time in her work history. (Tr. 51, 52, 66). Plaintiff cites a recent case from this court holding that the ALJ erred in determining that multiple disc herniations and severe degenerative disc disease did not meet the pain standard. *See Hill v. Barnhart*, 440 F. Supp.2d 1269, 1275 (N.D. Ala. 2006). However, that case is distinguishable because Plaintiff has only one, as opposed to multiple, disc herniations and does not suffer from a degenerative disc disease.

Additionally, Plaintiff's own testimony supports the ALJ's credibility finding. For instance, she stated that she could preform a job requiring her to lift five pounds so long as she was allowed to change positions. (Tr. 337). This statement is consistent with the ALJ's RFC finding and largely inconsistent with Plaintiff's allegations of disabling pain.

To be sure, the record, when considered as a whole, contains sufficient objective evidence to support the existence of an underlying medical condition. Nonetheless, determining the credibility

13

of a claimant is the duty of the ALJ.  *See Foote,* 67 F.3d at 1562.  The ALJ's credibility finding can only be disturbed by this court if it is not undergirded by substantial evidence.  *Id.*  Such is not the case here.  The ALJ had substantial evidence before him to support his credibility findings.

**VI.    Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____15th_____ day of March, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14